Call the next case please. Good morning your honors. My name is the defendant appellant in this case, Jamel Miller. I'd like to reserve two to three minutes for rebuttal please. Please proceed. May it please the court for purpose of this argument I'd like to concentrate on the substantive merits of two claims that were raised in Mr. Miller's first stage post-conviction petition that was summarily dismissed by the court. Those claims were the first that counsel was ineffective in failing to investigate and present testimony by witness Willie Boston that the decedent was in fact armed at the time of the shooting to support Mr. Miller's claim of self-defense on a reasonable belief in self-defense. We believe that Hodges in fact is on all fours with that specific claim. Secondly, Mr. Miller's claim that he was deprived of due process where the state allowed perjured testimony to go uncorrected by Lisa Sims to the effect that she had not spoken to the state about receiving leniency in a pending case. I do recognize however that the state has in fact raised essentially a new claim in its response brief challenging this court's prior disposition in Appeal 105-1293 in which this court reversed and remanded under Pearson and Shellstrom to allow Mr. Miller to file an amended petition and if this court would like I'll be the state's claim first. I certainly don't. No. All right. Without further ado then, with respect to Mr. Miller's first claim and that is that his counsel is ineffective in failing to investigate and present the testimony of Willie Boston to support his claim of self-defense on a reasonable belief in self-defense. In Hodges the Illinois Supreme Court made plain that the only question is whether this claim has an arguable basis in fact in law. And here there is no question that Mr. Miller has set forth a well-supported claim that should survive first stage dismissal. Specifically, at Mr. Miller's trial, his defenses were that he shot at Mr. Parks under the belief that Mr. Parks was about to, was reaching down for a gun and about to shoot at him. Well, let me just ask you, and I apologize for interrupting, but he did investigate, didn't he? I'm sorry? Counsel did investigate, did he not? Specifically, Willie Boston? He at least interviewed Boston, did he not? We actually don't know that. We know from the supplemental answer to discovery that Willie Boston is listed as a potential defense witness. Well, it's more than just listed, isn't it? Didn't the defense lawyer give to the state Willie Boston's supposed lynch material that they were going to use in the trial? Mr. Boston's lynch material? Yes. There was, when there's a self-defense claim That was Daryl Boston, I believe, actually, was Now, in the supplemental defense answer there is listed Willie Boston as a lynch witness, and the record says that his lynch material was tendered to the state. Okay, I suppose then based on the allegations we have in the petition, my understanding was that he was listed as a potential witness by the defense, but again, the record doesn't rebut Mr. Miller's allegations that in fact, counsel didn't present his testimony. What you claim as counsel is ineffective for failing to investigate what he basically has to say, but then Mr. Boston gives an affidavit, and in his affidavit, he doesn't say that he doesn't speak to defense counsel. He's never claimed that defense counsel didn't interview him. In fact, I'd like you to address the part in his affidavit in which he says, I wasn't going to testify because I was afraid of the deceased family, so I wasn't going to testify basically to the true facts if somebody had called me because I was afraid. Mr. Boston in his affidavit, in fact, did say that he had initially agreed to testify for the state, but that he had refused to testify for the state because No, it never said he agreed to testify for the state. It never said he agreed to testify. Okay, I'm sorry. Assuming that he had said that he would not testify because he was intimidated by Parks' family, that still doesn't believe counsel of the duty to investigate and potentially present his testimony. That's what we're asking. Where is the evidence that he did not investigate other than the statement in your argument, because the record belies that based upon the supplemental answer, the tender of the lynch material, and the fact that there is nothing in the affidavit of Mr. Boston saying that counsel never contacted him. One thing I would point to would be in Hodges, there was a situation where I'm not talking about Hodges, I'm talking about in your particular fact situation. I understand, Your Honor. I was trying to make an analogy to Hodges just insofar as in that case there were three witnesses, two of whom it was evident from the record specifically that they were witnesses at the time, and the court found in the petition it wasn't specifically alleged that counsel had been informed that they could provide favorable testimony. But in that case, there was only one witness, Glasper, that that allegation had pertained to. And in fact, the Illinois Supreme Court still said well, the record here shows that these people were actually witnesses at the time, and the allegations that they could have presented testimony to show that he was armed at the time were sufficient to survive first-stage dismissal. In this case, didn't the state, or wasn't defense counsel in possession of Mr. Boston's statement in which he inculpated your client in the case? Because there is indication that the state's evidence was turned over based upon Mr. Boston's affidavit, that he had given an inculpatory statement initially. He claims he was coerced, but doesn't say how, but he does say that he gave an inculpatory statement and that he would not testify basically to the truth if he were called to the stand. I suppose two parts to that question. One, that counsel still was under an obligation to investigate witnesses even if they were going to be not favorable to the defendant. Yeah, but then we're back to, I'm not getting where you have an allegation that he never that counsel never talked to Willie Boston. And again, that's based on taking the petition's allegations as true. And I believe Your Honor is saying that the record rebuts that affirmatively based on the fact that Mr. Boston's listed in discovery, and we submit that. And that supposedly his lynch type material was taken. Again, I can only stand on the allegations of the petition on that point. But if there's a factual discrepancy between the record and the allegations in the petition, then what? If there's a factual discrepancy between, well, then it's still an open factual question. I mean, the question is whether under Hodges it's fantastical or delusional the factual allegations. Can it be said that his claim here that counsel failed to investigate and or present Mr. Boston's testimony is a fantastical or delusional factual allegation? I don't think it can be said on this basis. Counsel, my questions are does the fact that Mr. Boston's name is listed as a defense witness necessarily mean that he was spoken to by defense counsel, that he was interrogated or investigated, or that he spoke with defense counsel? No, and I think that that's an assumption that the court's drawn from the record, but which is essentially speculative. I mean, certainly competent counsel, you would assume that if a witness is listed on an answer to discovery, has interviewed that witness. However, it can't be assumed that incompetent counsel has interviewed a witness that's listed on a supplement or answer to discovery, which is I suppose the very point of Mr. Miller's claim here. My second question is, does the fact that Mr. Boston's affidavit says that he was not at the time willing to testify for the state mean that he would also be unwilling to testify for the defense? Again, I think that's speculative from the record. If anything, if counsel became aware of the fact that Mr. Boston was unwilling to testify for the state, that should have triggered an additional duty to investigate to find out what the circumstances were under this, at which point he could have determined as Mr. Boston had stated in his affidavit that he had initially told the police that he in fact saw a gun at the time, but in fact had been encouraged to not testify about it or take that out of his statement. With respect to Mr. Miller's second claim, and that is that the state failed to correct perjure testimony by Lisa Sims, the state's main complaint with this is that it's not adequately corroborated. We believe that the allegations of the petition set forth specific enough facts and that Mr. Miller has identified objective sources that could corroborate his allegations. Specifically, his allegations are that at the time of trial, he heard Miss Sims speaking with one of the prosecutors about the fact that she wanted the prosecutor to speak on her behalf to the judge in her pending case, and Mr. Miller's additional allegation that in fact he did, that she did ultimately receive a lenient sentence. Now, in this case, admittedly he has not attached Miss Sims' sentencing transcripts from a subsequent case, but for Collins, he does actually explain why his efforts to do so, and he attached to his petition his own discovery motion seeking to obtain a copy of her sentencing transcripts, and in fact a letter that he sent to me as his appellate counsel asking that I procure Miss Sims' sentencing transcripts to support his claim. Apart from the question of whether it's corroborated, we believe it also has an arguable basis in fact in law. Sims' testimony was critical to the state's case based on the fact that she was the only witness in the car with Parks at the time of the shooting, and so her testimony that he was in fact, was not reaching for a gun at the time Mr. Miller fired upon him was critical evidence for the state. Had Mr. Miller been able to present, or had evidence been presented that in fact Miss Sims perjured herself and was negotiating the deal with the state for her pending case, this arguably could have undermined her credibility and buoyed up Mr. Miller's theory of defense. If there are no more questions? Thank you. Kelly? Good morning, Your Honor. It's Rita Kalachis on behalf of the people of the state of Illinois. Before addressing the merits, I'd just like to briefly address the procedural history of this case. The 2005 appeal hinged on whether the section 214.01 petition that was filed in January 2005 was re-characterized by the court as a post-conviction petition, and because the defendant obviously did not get shelves from Pearson Administrations that the basis of that appeal was that it should be essentially after a lot of appellate litigation, I should say, a lot of motion practice that went back and forth. The case was given back to Judge Lacey to help reconstruct the record. He was able to learn that the January 2005 filing was indeed a 214.01 petition but was not able to locate any kind of a record of the disposition of that, a written order, and was not able to locate the disposition of the post-conviction petition that was filed a month later. Based on this lack of information, with all due respect for the defendant's due process rights, the people did go forward and say let's do this equitably, and we agreed to an order remanding the case for 214.01 petitions. And then what happened in this case, in this appeal, was actually quite interesting in that the written order that would have disposed of the entire 2005 appeal appeared in this record without any comment from defense. And that order clearly stated it was Judge Lacey's March 22, 2005 order that clearly stated that he was dismissing the petitions as such. There was no recharacterization. He dismissed them as 214.01s. That would have precluded this entire litigation and essentially that's what the people had wanted initially in the 2005 appeal is to hold the defense to the obligation to support their arguments with documentation from the record below. So the implications of that now would have been that indeed if the 2005 petition were ruled upon, which is what Judge Lacey said in the order that's on appeal now, he said he did file upon the post-conviction petition of February of 2005 under his signature, and if that is indeed the case, then any subsequent petition would have been a successive petition. So the one that we're dealing with today would be a successive petition. The state stipulated to allow the petition. The state has stipulated. Is that not correct? That's why we're here today. No, I understand that. You guys made a mistake. Go on. You need to go forward with your argument. No, I understand. And because it follows that the people entered the agreed order on erroneous assumptions and that legally we would be dealing with a successive petition and while the people do not insist today that we should go forward with this petition as a successive petition, we just wanted the court to be aware of the facts as they have transpired over this very long, convoluted procedural history. I'll spend five minutes of your 15 minutes talking about that. Go ahead. No need to hold ground. Okay. Let's move forward then to the merits of the current petition. With respect to Willie Boston, the petitioner alleges that his trial counsel was ineffective for failing to investigate and call him and Willie Boston was originally identified in the state's discovery answer. But then defense counsel supplemented the answer as appellate counsel noted to include Willie Boston as a defense witness with additional lynch information that was given. Petitioner claims that Boston would have been willing to testify that he saw someone remove a gun from the dead victim's waistband. However, here, in this case, the record below affirmatively rebuts both the failure to investigate and the failure to call Willie Boston. Obviously, defense counsel with respect to the alleged failure to investigate did investigate Willie Boston's potential as a defense witness where he did identify him as a witness in the supplemental answer to discovery. And counsel suggested that because it's speculative that he may or may not have actually interviewed Willie Boston, we should presume that there was, for purposes at least of Hodges, that there was ineffective assistance of counsel. However, not in Strickland or in any decision following is there any kind of presumption of ineffective assistance of counsel. So I would strongly disagree with that characterization. Regarding the failure to call, there is no guessing why counsel could not and would not call Willie Boston as a defense witness strategically. Boston's affidavit clearly stated that he would not have testified for the state due to threats and intimidation from parks, cohorts, and family. His affidavit also implied a converse fear that his decision to let someone take a gun from parks would demonstrate that parks was somehow complicit in his own death and thereby offend parks' friends and family. So essentially, Willie Boston was stuck between a rock and a hard place. If he testified for the state that parks did not have a gun, he would induce retaliation from the petitioner's gang friends and family. If he testified for a petitioner that as petitioners now suggest, he would induce retaliation from parks' gang friends and family. Thus, Willie Boston's affidavit demonstrated a very sound strategic reason why his counsel did not call him because as a practical matter, counsel could not have predicted what Willie Boston would have ultimately said on the stand. With respect to the analogy to Hodges, this case is materially different from Hodges in these respects. In Hodges, there was no evidence that Hodges' counsel knew of the existence of the three witnesses Hodges later wished to call, and there was also no statement that the witnesses were threatened by or otherwise feared retaliation from either side in that case. Furthermore, Hodges testified to hard facts showing that there were bullets flying from forward of him, and the only person who was in front of him was the victim. And then there were bullets flying from behind him from his own friends. Thus, the three witnesses' testimony in that case that the victim was indeed armed would have directly corroborated Hodges' belief in his testimony that the victim was shooting at him. Here, all of the witnesses in this case, including Petitioner himself, testify that none of them saw the victim with a gun either before or after the shooting. That was very clear at the trial. Thus, finding a gun in Park's waistband after the shooting did not make Petitioner's belief any more reasonable that prior to the shooting the victim was reaching down in his car for a gun. It didn't make that belief any more reasonable or believable. Regarding Lisa Sims and the alleged perjury that these statements... But doesn't it take it out of the fanciful arena if in fact Mr. Boston saw a gun being removed? Doesn't that at least give him a legal argument that the defendant was acting in self-defense? However, we have another layer... Because we're talking about only the gist of a meritorious claim. Right. But the gist of the claim that we are speaking of is the claim of ineffective assistance of counsel. And here we have an attorney who, A, investigated the case, and B, made a strategic choice not to call Mr. Boston. And ergo... And so if that counsel failed to call Mr. Boston or failed to interview him, then that means that evidence of a gun being present is not presented. Which was evidence which could have eliminated the fanciful aspect as far as the facts were concerned. Yes, Your Honor. But in order to reach that conclusion, we have to assume that counsel did not conduct a proper investigation and assume that counsel did not make a sound strategic decision. Well, you're assuming all these other reasons for the counsel to be making a strategic decision. So if we're assuming, let's look at all of the evidence in the case and assume that the counsel perhaps failed to call the witness and failed to get that evidence on the record. Again, Strickland does not allow a presumption, even in the context of a Hodges analysis, a presumption that there was ineffective assistance of counsel. In this case, all the arrows are pointing in the other direction. And to engage in a presumption that counsel was ineffective when Strickland clearly states that strategic choices are immune from ineffective assistance of counsel analysis, I think would do violence to that decision as well. So our position is that defendant's ineffective assistance of counsel claim fails because his showing, his attempt to show that his counsel was ineffective is clearly rebutted by the record as it exists in the court below. Moving on to Ms. Lisa Sims. Petitioner alleges that the state violated his due process rights by using her allegedly perjured testimony. Allegedly perjured testimony. Lisa Sims was in the car with Parks when she and Parks were shot and testified that she did not see a gun in Parks' car, nor did she see Parks with a gun at any time that day. She was very clear in that testimony. And the state, she also stated the state made no promises to her in exchange for her testimony. To substantiate his claim, Petitioner averted his verified petition for post-conviction review that during his trial, both his brother and he overheard the state and I'm quoting now from the petition, overheard the state and Ms. Sims making arrangements for them to speak to her sentencing judge and get her probation. He also alleged without any corroboration that Sims indeed received an exceedingly lenient sentence. However, like in Collins and Delton for that matter, Petitioner provided no foundational information to corroborate those claims. That the conversation between Sims and a prosecutor in fact took place or any of the surrounding circumstances of that conversation. So it's not even clear from his petition whether that conversation took place. There was no date or time. There was no exact location noted. He did not identify the prosecutor who sentenced Sims or state whether anyone else was present. He did not provide the affidavit of his brother, Walter Nunn, who was also there and would presumably be a sympathetic witness for him and did not explain the absence of Walter Nunn's affidavit. And despite allegedly making efforts to find out the disposition of Sims' criminal case, he did not even identify the case in which Sims allegedly received a lenient sentence or what that sentence was in exchange for her testimony against him. Thus, we maintain that the post-conviction petition was not factually sufficient and thus did not meet the test for legal sufficiency under Collins. Indeed, if this conversation ever even occurred, it follows that Petitioner should have told his trial counsel. It's very simple than that. About it immediately. However, he chose to remain mute. He didn't bring this up at trial or post-trial motion or any Section 214 petition that he filed or even his February 2005 post-conviction petition. Thus, he precluded the trial court from addressing Sims' possible perjury at the very critical moment when it occurred, at trial, at the time it was most pertinent and could have been investigated and corrected then and there. So, if the court has no further questions, the State requests... Can you make some point about the documents that the defendant was unable to retrieve from the clerk's office? My question is, he was represented by the public defender. Is that not correct? There is no evidence that he was at that point being represented by a public defender. State appellate defender, I'm sorry. So then, if he is pro se and indigent, would that not be a sufficient excuse for why he could not receive the documents? He couldn't pay for them if he was indigent. So then, if he didn't have access to them, isn't that sufficient under the statute where he's required to give an explanation of why his position is not documented? Your Honor, neither Collins or Dalton states that where a petitioner is indigent, he is somehow excused from the procedural requirements of substantiating his claims in some fashion. The fact that the defendant couldn't get the actual records, putting that aside... But that is the question that I'm talking about. If you're not getting the actual record, don't put that aside. Because that's my question. I'm only putting it aside for the purpose of stating this. He stated in his petition that Sims indeed received an exceedingly lenient sentence. Now, he must have had some sort of reasonable basis to make that allegation. How did he know that? Whom did he speak to? Who told him that? What case was he talking about? Was it his friends or relatives who told him that? Was it somebody in the courthouse who told him that? We don't know. He just makes a bald, unverified, unsubstantiated allegation. But it would be the records, the transcripts from that sentencing that would say whether that was accurate or not. These are the records which he was unable to retrieve. Correct? That's true. But he did make an allegation that she received an exceedingly lenient sentence which was completely uncorroborated. As far as the court below knows, he pulled that out of a hat. How did he know that information? He certainly couldn't corroborate it because he couldn't get the records. But where did he hear the information in the first place? That's our position. And if the court has no further questions now... I just have a comment. Yes. He could have provided his own affidavit and he could have provided his brother's affidavit. Correct. Which wouldn't have cost him, I assume, anything and he didn't do that. Does he ever... I mean I know there's something in here where he says he asked for the Sims transcript with a whole bunch of other things. Was there any indication that he asked for the Sims guilty plea transcript alone and said why he wanted it to the judge that he asked for it from or whoever he wrote to for it? My understanding was that he did, but I can't be positive. I don't have that request before me right now. It's in the record. Okay. Thank you for your time. Thank you, Counsel. Rebuttal? Mary Bree? Just briefly, I did want to clarify for the court and if there's been an oversight on my part, I apologize, but there are in fact two Bostons that are involved in the case. There's a Daryl Boston and a Willie Boston. Daryl did testify and Willie didn't. Right. You know, since you raised it, I'm still stuck on Willie. Can we go back to Willie for a moment? Sure, of course. It is clear that he was in on your client's list, correct? Yes. Now let me ask you this. Under Hodges, is it your contention that our analysis should be that just because he's on the list, we can't necessarily assume that he was interviewed? Absolutely. Well, let me ask you this then. If that's true, let's assume that your client's attorney in fact did not interview Willie Boston. Right. Is that per se ineffective? Per se ineffective? I would say under these circumstances that it's certainly arguably ineffective by virtue of the fact that it's I'm contested that Willie Boston was in fact an eyewitness to this. And the state's witnesses are testifying. Willie Beachy Boston and Parks are fighting there. And so there's no question that he is actually a witness, or at least he's on the scene of the shooting. And as far as counsel's duty to investigate, I would suggest, and I think we have cited an ABA standard in the opening brief, just for the proposition of yes, there's a duty on the part of counsel to investigate witnesses that can potentially be exonerating. There's also a duty on the part of counsel to investigate the state's evidence against his client. What about the distinction between interviewing and investigating? Interviewing and investigating? I'm sorry, in the... In the context of Willie Boston? In this context, the failure, because the allegation here is specifically a failure to interview. Right. That's true. I think interviewing is a part of the, is within the ambit of investigation. It's a smaller subset, correct? It is a smaller subset of investigation. Now, whether there was other forms of investigation that went on here by counsel, again, I would like to remind the court that it is a first stage, and I understand that he has to set out an arguable factual basis for this. But whether or not he performed an adequate amount of investigation, whether or not a strategic decision was in an interview, wasn't something to follow up on, those are questions that can't be answered from this record. And again, the mere fact that he is in fact listed as a potential defense witness doesn't actually rebut the allegation in the petition that counsel potentially, arguably was ineffective for failing to interview him and or present his testimony to support self-defense on a reasonable belief in the need for self-defense. I just, because both my partners and you now have said he put him on as a defense witness. He doesn't just put him on as a defense witness. There was a defense answer file and then a supplemental answer. He was not just listed as a potential defense witness, he was listed as a lynch material witness, which would be someone who would go to the issue of self-defense and the record says that he tendered, meaning defense counsel tendered this particular witness, Willie Boston's lynch testimony to this day. So I mean, I think the record is rebutting the fact that counsel didn't have any contact with him if he had something to tender that he was going to say at the trial that was lynch type material. I guess then the second point would be still then the assumption here, there are still open questions on the record of why counsel ultimately decided not to call Willie to testify. And again, I think that those are second stage factual issues. With respect to the question of Ms. Sims, Your Honor, I know one of your concerns was that he didn't present his brother's affidavit. Or his own. Or his own. He presented his verified, his alibi. Which is not a separate affidavit. But I think a number of things under the circumstance of this case. One, Collins and Delton don't say you have to supply the best evidence possible. They say that you have to identify objective sources that corroborate. And he did that here. Now, would it have been better if he had presented his brother's affidavit? Certainly. Possibly. But the standard for first stage and for substantiation isn't have you presented the best evidence. It's have you satisfied 122-2. And here where he's offered an explanation of his attempts. First of all, that he's offered an explanation of there are sources that could independently corroborate his factual allegations. And shown that he made attempts to do those. We believe he satisfied Collins. What about the state's argument that they didn't say the date, the time, the location, who was present, where the conversation occurred, other than that one line. Other than the one line. Yes. That's all he said. Again, I think that the allegations of the petition need to be read in conjunction with the record here. And the fact is, the fact that defense counsel, we have the allegations the petition of, I overheard at the time of my trial prosecutors speaking with Ms. Sims. We have that. But I think that the record itself provides some form of independent corroboration insofar as counsel actually asks the question on cross of this day did you talk to, where's the effect of did you talk to the state about, you know, talking to the judge in your case. And so I think that provides some form of corroboration. I mean, again, could it have been better? Certainly. But I think under Collins, looking at the record, coupled with his attempts to obtain additional objective evidence to corroborate more than satisfies the first stage findings. Your time has far expired. Thank you, Your Honor. Thank you. Thank you both.